**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| NICHOLAS WEIR, | ) |
| | ) |
| | )    Civil Action 21-1206 |
| Plaintiff, | ) |
| | )    Judge Colville |
| vs. | )    Magistrate Judge Dodge |
| | ) |
| UNIVERSITY OF PITTSBURGH, et al., | ) |
| | ) |
| | ) |
| Defendants. | ) |
| | ) |

**REPORT AND RECOMMENDATION**

### I.   Recommendation

It is respectfully recommended that Defendants' Motion to Dismiss the Second Amended Complaint (ECF No. 98) be granted.

### II.   Report

Plaintiff Nicholas Weir originally commenced this action under seal and using a pseudonym, asserting various causes of action under federal and state law. His claims are alleged to have arisen during his studies at a graduate program at the University of Pittsburgh and his eventual dismissal from the program. In the Second Amended Complaint ("SAC") (ECF No. 94), he asserts 32 claims of racial discrimination, civil rights and other causes of action against the following defendants: the University of Pittsburgh (the "University"); Dr. John Horn, Director of his Ph.D. program; Dr. Kara Bernstein, his first advisor and director of the specific research department he joined; Vice Dean Ann Thompson, and an unknown number of "John Does" and "Jane Does."

Currently pending before the Court is Defendants' motion to dismiss (ECF No. 98) the SAC. Their motion has been fully briefed (ECF Nos. 99, 101, 111). For the reasons that follow, the motion should be granted.

A. **Relevant Procedural History**

Plaintiff commenced an action in the Court of Common Pleas of Allegheny County on August 29, 2020, captioned *N.W. v. University of Pittsburgh*, GD-20-009164. In that Complaint, he asserted claims under Title VI of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000d to 2000d-7 ("Title VI") and the Pennsylvania Human Relations Act, 43 P.S. §§ 951-63 ("PHRA"). Plaintiff later attempted to remove the state court case to this Court, which was docketed at Civ. A. No. 20-1964. After Defendants objected to the removal, District Judge Wiegand, to whom the case was assigned, remanded the case to state court on December 29, 2020.

Plaintiff ultimately appealed to the United States Court of Appeals for the Third Circuit. On May 27, 2021, the Third Circuit issued an order that addressed his appeal. In relevant part, the court dismissed the appeal based on lack of jurisdiction with respect to the remand order, but stated that to the extent it had jurisdiction, the district court's judgment was summarily affirmed because the appeal presented no substantial question. The state court case remains pending at this time.

Plaintiff then commenced the present action in September 2021. In response to a motion to dismiss filed by Defendants, Plaintiff subsequently filed an Amended Complaint on November 16, 2021 (ECF No. 56). Defendants then moved to dismiss the Amended Complaint (ECF No. 64). In the Report and Recommendation ("R&R") (ECF No. 87) that addressed the motion to dismiss, it was recommended that Counts 7 (participation theory), 20 (punitive damages), 21 (respondeat superior liability) and 22 (vicarious liability) should be dismissed with prejudice. It was further recommended that Counts 2 (PHRA) and 3 (which raised claims under the Pennsylvania Fair Educational Opportunities Act, 24 P.S. §§ 5001-10 ("PFEOA")) be dismissed with prejudice as time-barred to the extent they were based on Plaintiff's dismissal from the graduate program. Finally, the R&R recommended that Plaintiff's remaining claims should be dismissed without

prejudice and with leave to amend by filing a Second Amended Complaint to attempt to cure the deficiencies in such claims.

On May 3, 2022, Judge Colville issued an order (ECF No. 93) in which he adopted the R&R as the opinion of the Court and directed Plaintiff to file a second amended complaint by May 24, 2022. Plaintiff, who had been proceeding by a pseudonym, was also directed to file the second amended complaint in his own name. Defendants' motion to dismiss followed.

**B.  Factual Allegations in the Second Amended Complaint**

Plaintiff alleges in the SAC that:

From around October 2019 through to April 2021, [he] has been subjected to coordinated, disparaging, and widespread ill-treatments from students and employees of the University of Pittsburgh. A hostile work and learning environment developed quickly as Plaintiff observed outsiders associated with ongoing lawsuits infiltrating the University around October 2019. These outsiders, both private individuals and government agents, are associated with ongoing lawsuits involving discrimination, retaliation, among other claims which Plaintiff commenced against other parties such as Montefiore Medical Center et al. in the Supreme Court of the State of New York, Bronx County, (Index # 42000/2020E which originally commenced in December 2016) and the City University of New York et al. in the Court of Claim of the State of New York, (Index # 127764 which originally commenced in December 2015). During that same Fall 2019 semester, Plaintiff reported to the Chancellor of the University and subsequently the Executive Director of the Graduate Office about the retaliation he was facing tied to ongoing lawsuits. Dr. John Horn, director of the Ph.D. program Plaintiff was affiliated with also received similar and additional reports of the presence and expansion of a hostile environment.

(SAC ¶ 1.) Plaintiff contends that he was "harassed during class by lecturers and outside of class by employees and students stemming from the larger retaliatory initiatives against him." Further, he was "harassed and/or maliciously stalked by staff, John Does and Jane Does, from the military recruitment office at the University with not only repeated requests to join the military but also repeated stalking." (*Id.* ¶¶ 2, 3.) Alleging that other students and employees outside his protected classes (race, color and national origin) were not subjected to the same treatment, Plaintiff asserts

throughout the SAC that that he "was treated differently because of his race (Black), color (dark brown), national origin (Jamaica), and engagement in protected activities." *See, e.g.,* SAC ¶ 4.

Plaintiff alleges that he received "excuses after excuses" from lecturers regarding the grades assigned to certain exam questions. Dr. John Horn, the director of his Ph.D. program, promised to review the exams. Instead of conducting a review, however, he placed Plaintiff on academic probation in December 2019 and barred Plaintiff from engaging in certain activities. (SAC ¶¶ 5, 9.) According to the SAC, "Dr. Horn coerced Plaintiff to meet with a psychiatrist, John A. Doe, at the University of Pittsburgh Medical Center to avoid termination around January 2020." (*Id*. ¶ 5.) At the onset of the meeting, the psychiatrist "attempted to label Plaintiff as psychotic with literally no basis." (*Id.* ¶ 10.) Plaintiff went to the counseling center, but counselors Jane A. Doe and Jane B. Doe were dismissive because he did not reside on campus. (*Id.* ¶ 11.)

In the fall of 2019 while Plaintiff was in a rotation in Dr. Kara Bernstein's lab in the Department of Molecular Genetic and Developmental Biology, "outsiders (related to Plaintiff's ongoing lawsuits) begun [sic] to sabotage his work environment." (SAC ¶¶ 6, 12.) Plaintiff alleges that Dr. Bernstein "welcomed the retaliatory actions," which consisted of him being stalked and harassed by employees in the building, as well as "government agencies including the US military, CIA, and the FBI, and their agents." This pattern continued during his second lab rotation. (*Id.* ¶¶ 6, 7, 12.) From January through March 2020, Plaintiff notified the Chancellor and Executive Director of the Graduate Office about the retaliation he was facing. (*Id.* ¶ 8.)

Plaintiff's inquiry in April 2020 about a final exam date was mischaracterized to the entire class as a "troubling email" by Dr. Bennett Van Houten. (SAC ¶ 13.) Dr. Van Houten later apologized but did not send a follow-up email. (*Id*.) Plaintiff reported this conduct to the co-director of the course. (*Id*.)

Mitchell Harancher, who is white, was timely advised and joined a lab of interest, but Dr. Bernstein gave Plaintiff late notice of the steps needed to join a lab ahead of the August 31, 2020 deadline. (*Id.* ¶ 14.) On August 14, 2020, before that deadline, Plaintiff formally joined his third rotation as approved by Dr. Bernstein and Dr. Bokai Zhu. Later that month, however, Dr. Horn terminated him from the Ph.D. program because Plaintiff failed to register to retake a required course. Plaintiff then filed a lawsuit in state court arising out of this incident and appealed to the Dean, who reinstated him. (*Id.* ¶¶ 15-16.)

In September 2020, Dean Anantha Shekhar reviewed Plaintiff's exams and gave him the option of either retaking the course or taking a one-year leave of absence. Because Dr. Zhu had "abandoned" the fully-funded appointment he had approved, however, the Dean gave Plaintiff a conditional one-year scholarship which required him to retake the course and find a new lab. Plaintiff reached out to Dr. Jianhua Xing, who agreed to allow Plaintiff to rotate in his lab starting around October 16, 2020. However, Dr. Xing "suddenly changed his demeanor and interest without cause on Plaintiff's end … [and] made taking a machine learning course a definite requirement near the end of the semester." (SAC ¶¶ 17-18.) On October 12, 2020, Plaintiff was told to find another lab for rotation in spring 2021 and indicated that he should not be concerned about it because he would get other opportunities later. (*Id.* ¶ 19.)

Plaintiff alleges that he was misled about the timeline when he needed to join a lab again and that he did sign up for two labs within the normal timeline, but both labs "abandoned the agreement after Plaintiff filed [a] complaint in state court upon his initial termination (August 19, 2020)." (SAC ¶ 20.)

On November 24, 2020, Plaintiff emailed Dean Shekhar about "the continued and ongoing retaliatory actions he faces as well as widespread cheating reported in the required course that he

was retaking." (SAC ¶ 21.) The dean's office "maliciously declined to intervene." (*Id.* ¶ 8.) Although Dean Shekhar promised to reply to his email, Plaintiff later received an email from Vice Dean Ann Thompson, who informed him that "the Dean's Office does not conduct investigations of this sort." She provided him with two links where he could file a report and he did so on December 8 and 9, 2020. (*Id.* ¶¶ 21-23.) Plaintiff alleges that he subsequently heard from Laurel Gift, the Assistant Vice Chancellor in the Office of Compliance, Investigations & Ethics, that she "respectfully disagreed with Vice Dean Ann Thompson's interpretation of the faculty obligations under the academic integrity policy, which clearly includes references to discrimination." (*Id.* ¶ 27.) However, Ms. Gift did not follow up on the reports she received. (*Id.* ¶ 28.)

Plaintiff received a second termination letter from Dr. Horn on December 10, 2020. Dr. Horn advised Plaintiff that none of his mentors from his lab rotations had concluded that he was qualified to conduct dissertation research in their programs. (SAC ¶ 24.) Dr. Horn's letter also noted that Plaintiff had advised a committee from the graduate training faculty that he had decided that his most important priority was to do computational research related to aging and that he chose to work in the research group of Dr. Xing. However, Dr. Xing concluded that Plaintiff did not have the requisite background to master certain matters at a sufficient level for research in the Xing research group. (*Id.* ¶ 25.) According to Plaintiff, these statements are "clearly inconsistent with reality and the facts noted herein." (*Id.* ¶ 26.)

Between January 2021 and April 15, 2021, Plaintiff attended the three virtual courses which he had registered for prior to receiving Dr. Horn's termination letter. (SAC ¶ 29.) On February 24, 2021, he received an email that his student sponsored email account would expire on March 3, 2021. He sought an extension from Cynthia Stonebraker in the Department of Medicine and initially obtained an extension until April 3, 2021, but Dr. Horn subsequently had it shortened

to March 10, 2021. (*Id.*)

Plaintiff received a cease-and-desist letter from Vice Dean Thompson on April 15, 2021. It advised him that he was "no longer permitted on any University property (this includes virtual spaces). You will also be required to cease any and all communication with University faculty and staff." The letter threatened Plaintiff with "the issuance of a Persona non Grata ("PNG") notice and/or the filing of criminal trespass or harassment charges" if he did not comply. Plaintiff challenged the Vice Dean's "deceptive narrative" and sought an explanation of why other people were allowed to audit a course when he was not. He also "sought clarification regarding the legal basis and University Code of Conduct policy violation(s) for the threat of Persona non Grata and/or filing of criminal trespass or harassment charges." Vice Dean Thompson did not respond to his inquiries. (SAC ¶ 33.)

After April 9, 2021, Plaintiff no longer received emails about the upcoming final exams. He claims that this was done maliciously. (*Id.* ¶ 34.) Plaintiff was unsubscribed from the email list of his Ph.D. program department in May 2021, although he continued to receive occasional emails about applying for a training grant. But he states that, even if had applied for the training grant, the termination letter would have hindered his matriculation into the program. (*Id.* ¶ 36.)

### C. Standard of Review

"Under Rule 12(b)(6), a motion to dismiss may be granted only if, accepting all well-pleaded allegations in the complaint as true and viewing them in the light most favorable to the plaintiff, a court finds that plaintiff's claims lack facial plausibility." *Warren Gen. Hosp. v. Amgen Inc.*, 643 F.3d 77, 84 (3d Cir. 2011) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007)). "This requires a plaintiff to plead "sufficient factual matter to show that the claim is facially plausible," thus enabling "the court to draw the reasonable inference that the defendant is

liable for misconduct alleged." *Id.* (quoting *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009)). While the complaint "does not need detailed factual allegations ... a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. *See also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

As noted by the Third Circuit in *Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011), a 12(b)(6) inquiry includes identifying the elements of a claim, disregarding any allegations that are no more than conclusions and then reviewing the well-pleaded allegations of the complaint to evaluate whether the elements of the claim are sufficiently alleged. If a claim "is vulnerable to 12(b)(6) dismissal, a district court must permit a curative amendment, unless an amendment would be inequitable or futile." *Phillips v. County of Allegheny*, 515 F.3d 224, 236 (3d Cir. 2008) (citation omitted). However, factors that weigh against amendment include "undue delay, bad faith or dilatory motive on the part of the movant, *repeated failure to cure deficiencies by amendments previously allowed,* undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc." *Foman v. Davis*, 371 U.S. 178, 182 (1962) (emphasis added).

"A document filed *pro se* is to be liberally construed and a pro se complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers[.]" *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (internal citation and quotation marks omitted); *see also Higgs v. Att'y Gen.*, 655 F.3d 333, 339 (3d Cir. 2011) ("The obligation to liberally construe a pro se litigant's pleadings is well-established."). Nonetheless, "*pro se* litigants still must allege sufficient facts in their complaints to support a claim." *Mala v Crown Bay Marina, Inc.,* 704 F.3d 239, 245 (3d Cir. 2013).

### D. **Discussion**

#### 1. Federal Discrimination Claims

Plaintiff has alleged racial discrimination claims under 42 U.S.C. § 1981, Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e to 2000e-17 ("Title VII") and Title VI based on disparate treatment (Counts I, IV and XII); retaliation (Counts II, V and XIII) and hostile work environment (Counts III, VI and XIV).[1] All of these claims are analyzed the same way. Defendants contend that all of the claims should be dismissed.

##### a. Disparate Treatment

A plaintiff alleging a claim of disparate treatment discrimination under Title VII must first make out a prima facie case under *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-04 (1973). This usually involves a showing that the plaintiff belongs to the protected class, was qualified for the position and was subjected to an adverse employment action under circumstances that raise an inference of discrimination. *Id. See also Sarullo v. U.S. Postal Serv.*, 352 F.3d 789, 798 (3d Cir. 2003). The same analysis is used for claims under § 1981 and Title VI. *See Patterson v. McLean Credit Union*, 491 U.S. 164, 186 (1989) (§ 1981); *Manning v. Temple Univ.*, 157 F. App'x 509, 513 (3d Cir. 2005) (Title VI).

As the Third Circuit has held, it is not necessary to establish a prima facie case of discrimination in a complaint. *Martinez v. UPMC Susquehanna*, 986 F.3d 261, 266 (3d Cir. 2021). "The complaint need only allege enough facts to 'raise a reasonable expectation that discovery will reveal evidence of [each] necessary element.'" *Id.* (citation omitted). *See also Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 510 (2002) (establishing a prima facie case is an "evidentiary standard,

---

[1] In addition, Plaintiff alleged a claim under Title VII for "aiding and abetting" (Count VII). However, in response to Defendants' motion, he conceded that this claim does not exist. (ECF No. 101 at 15.) *See Dici v. Commonwealth of Pa.*, 91 F.3d 542, 552 (3d Cir. 1996).

not a pleading requirement."); *Connelly v. Lane Const. Corp.*, 809 F.3d 780, 791 (3d Cir. 2016).

To plead a prima facie case of disparate treatment in an educational setting, a plaintiff must allege that "(1) he is a member of a protected class; (2) he suffered an adverse action at the hands of the defendants in his pursuit of his education; (3) he is qualified to continue his pursuit of his education; and (4) he was treated differently from similarly situated students who are not members of a protected class." *David v. Neumann Univ.*, 177 F. Supp. 3d 920, 929 (E.D. Pa. 2016) (quotation omitted). Plaintiff adequately alleges that he is a member of a protected class and alleges that he suffered adverse actions in pursuit of his education. However, his Second Amended Complaint otherwise fails to plead facts that support a claim of disparate treatment.

In multiple places in the Second Amended Complaint, Plaintiff alleges that he was treated differently than "other students." For example, he alleges that other similarly situated students "were not deprived of intervention by those who had the power to prevent. . . an escalating retaliatory, discriminatory, and hostile environment." (SAC ¶ 8.) Notably, however, the unique environment he identifies was only directed at him, not at other students. He does not allege that other students were subject to discrimination, retaliation or a hostile environment, let alone that any of the Defendants intervened on their behalf. Similarly, his allegations that "other students" were not "coerced" to meet with a psychiatrist and then labeled as psychotic, asked about legal actions or obstructed from unidentified protected activities lacks factual support that any other students were, in fact, similarly situated by being stalked and harassed by "outsiders," students and employees. (SAC ¶ 9.) Plaintiff's other conclusory statements about disparate treatment also fail to state any facts to support his claim that any other student was similarly situated and treated more favorably. *See* SAC at ¶¶ 11, 12, 13, 15, 16,19, 22, 23, 26, 28, 32, 34 and 36.

Indeed, Plaintiff only identifies one specific individual, Mitchell Harancher, who is alleged

to be Caucasian and similarly situated. He alleges that Harancher was timely advised to join a lab of interest and did not have his lab appointment abandoned. These allegations are wholly insufficient to support a claim of disparate treatment. Plaintiff admits that despite belated notice of the need to formally join a lab, he was nonetheless able to join a lab prior to the deadline. Further, he claims that unlike Harancher (and other students), his lab agreement was abandoned. He specifically alleges, however, that his lab agreement was abandoned because he filed a lawsuit and complained about bias and retaliatory grading. He fails to claim that Harancher or any other student engaged in this activity or were unqualified to continue but nonetheless retained their lab appointments. Thus, even though he has attempted to identify a comparator who was treated differently, he has not alleged that he and Harancher, or any other student, were similarly situated.

Similarly, Plaintiff pleads that he was told that he was dismissed from the program because three mentors from his first-year lab rotations concluded that he was not qualified to conduct dissertation research in their programs. Further, Dr. Xing, the professor for his fourth rotation (who is not named as a defendant) concluded that he "did not have the requisite background in mathematics, physics and computer programming to enable him to master machine learning and other techniques at a level sufficient for research in the Xing research group." Plaintiff does not allege that he was qualified to continue in the program given the grades and reviews he received or that the University misrepresented what his requirements were. Rather, he contends that he received unfair grades and reviews. Again, other than his conclusory statements, he does not allege any facts to support that there were any similarly situated students who, despite poor grades and insufficient background, were treated differently.

Thus, because Plaintiff has failed to plausibly allege any facts that support his claim that he was treated less favorably than similarly situated students who are not members of a protected

class, he has failed state a disparate treatment claim upon which relief may be granted.[2]

As Defendants note, the remainder of Plaintiff's allegations about disparate treatment are not cognizable. This includes his claims that various lecturers did not respond to emails, spoke to him with an upset tone of voice, provided him with excuses regarding the grade assigned to certain exam questions and provided him with only a seven-day extension before his student-sponsored email account expired. As Defendants point out, these allegations do not state a claim for disparate treatment under any anti-discrimination statute because they do not allege any "adverse action." *See Miller v. Thomas Jefferson Univ. Hosp.*, 908 F. Supp. 2d 639, 649 (E.D. Pa. 2012) (clinical coordinator's "evaluations of the Plaintiff and her occasional clashes with the Plaintiff do not constitute adverse action"), *aff'd*, 565 F. App'x 88 (3d Cir. 2014). Similarly, he cannot raise claims based on the fact that he was told that he would not be allowed to be on campus after he had been dismissed from the program. *See Astaraee v. Villanova Univ.*, 509 F. Supp. 3d 265, 275 (E.D. Pa. 2020) (plaintiff's claim that the university had him falsely arrested for trespass survived a motion to dismiss only because he claimed the arrest occurred *before* he was dismissed from the university, contrary to the provisions of the university's dismissal policy).

Therefore, with respect to the disparate treatment claims asserted in Counts I (§ 1981), IV (Title VII) and XII (Title VI), the motion to dismiss should be granted.

b. Retaliation

The prima facie case elements for a retaliation claim are : 1) the plaintiff engaged in activity protected by the anti-discrimination statute; 2) the defendant took action that a reasonable person would have found to be materially adverse in that it might well have dissuaded a reasonable person

---

[2] Indeed, Plaintiff fails to allege whether any of the "other students" were also members of a protected class.

from making or supporting a charge of discrimination; and 3) there is a causal connection between the plaintiff's opposition to or participation in proceedings against unlawful discrimination and the defendant's action. *Moore v. City of Philadelphia*, 461 F.3d 331, 341-42 (3d Cir. 2006).

As the court in *Moore* explained:

> With respect to "protected activity," the anti-retaliation provision of Title VII protects those who participate in certain Title VII proceedings (the "participation clause") and those who oppose discrimination made unlawful by Title VII (the "opposition clause"). *Slagle v. County of Clarion*, 435 F.3d 262, 266 (3d Cir. 2006). Whether the employee opposes, or participates in a proceeding against, the employer's activity, the employee must hold an objectively reasonable belief, in good faith, that the activity they oppose is unlawful under Title VII. *Clark County v. Breeden*, 532 U.S. 268, 271, 121 S.Ct. 1508, 149 L.Ed.2d 509 (2001) (per curiam) (rejecting retaliation claim where "[n]o reasonable person could have believed that" the underlying incident complained about "violated Title VII's standard" for unlawful discrimination); *Aman v. Cort Furniture Rental Corp.*, 85 F.3d 1074, 1085 (3d Cir. 1996) (retaliation plaintiff must "act[ ] under a good faith, reasonable belief that a violation existed").

*Id.* at 341.

Defendants correctly contend that Plaintiff does not plausibly allege that he engaged in protected activity. Plaintiff alleges that he complained about receiving unfair grades; reported that "outsiders" were stalking him and "sabotaging" his work environment; made an inquiry about an exam date; told university officials that he was being harassed by students and employees in the building, as well as "government agencies including the US military, CIA, and the FBI, and their agents" due to unrelated lawsuits he had commenced before his enrollment at the University; expressed disagreement about the University's interpretation of certain faculty obligations; complained about cheating by other students; objected to his termination from the program and his ability to take virtual courses thereafter; and challenged the issuance of a persona non grata letter after his termination. None of these allegations refer to protected activity under the anti-discrimination statutes because no reasonable person could have believed that the underlying

incidents reported by Plaintiff violated the law. Therefore, because he cannot state a claim for retaliation and with respect to Counts II (§ 1981), V (Title VII) and XIII (Title VI), the motion to dismiss should be granted.

### c. Hostile Environment

To base a claim on a hostile environment, a plaintiff must show "(1) that he or she suffered intentional discrimination because of race; (2) the discrimination was pervasive and regular; (3) the discrimination detrimentally affected the plaintiff; (4) the discrimination would detrimentally affect a reasonable person of the same race in that position; and (5) the existence of respondeat superior liability." *Aman*, 85 F.3d at 1081.

As previously discussed, Plaintiff's claims of a hostile environment fail to plead specific facts that show that he sustained intentional discrimination based on his race. Simply put, beyond his conclusory statements that this was so, he fails to set forth any facts that support, or even suggest, that Defendants' alleged conduct was due to his race. Moreover, many of the actions that purport to have created a hostile environment were those of "outsiders," "private individuals," "government agents" and other students. These actions are not attributed to any of the Defendants, nor can they face respondeat superior liability based on the actions of these third parties.

Defendants also contend that Plaintiff has failed to allege sufficiently severe or pervasive conditions or facts suggesting they engaged in racial discrimination. They are correct. *See David*, 177 F. Supp. 3d at 929 (allegations of a hostile environment based on the repeated use of the terms "slave" and "slave master" to describe anatomical structures were not sufficient, even if they engendered offensive feelings).

Thus, as Plaintiff has failed to plead any facts that support a claim of hostile environment, against any of the Defendants, Counts III (§ 1981), VI (Title VII) and XIV (Title VI) should be

dismissed.

          2.   <u>Equal Protection Claim</u>

Plaintiff also asserts an equal protection claim under the Fourteenth Amendment in Count XXXII. "The Equal Protection Clause of the Fourteenth Amendment commands that no State shall 'deny to any person within its jurisdiction the equal protection of the laws,' which is essentially a direction that all persons similarly situated should be treated alike." *City of Cleburne, Tex. v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985).

Defendants contend that Plaintiff has not alleged any facts to show that he has been treated differently from other similarly situated individuals, citing *Kokinda v. Pennsylvania DOC*, 2019 WL 6620906, at *8 (W.D. Pa. Jan. 22, 2019), *report and recommendation adopted*, 2019 WL 6620482 (W.D. Pa. May 3, 2019) (among other deficiencies, plaintiff's failure to failed to identify any other similarly situated person who engaged in similar conduct and was treated more favorably was fatal to his claim.)

Plaintiff alleges that Harancher received more favorable treatment because Harancher received prompt notice of the requirement to join a lab of interest and was never terminated from the lab he selected. As previously discussed, however, these allegations do not support Plaintiff's claim that Harancher was treated more favorably, or even that Harancher was similarly situated. As the SAC states, Plaintiff was able to join lab before the deadline despite belated notice. He was later advised by the supervising professor that he was not qualified to continue with this lab. In addition, three other professors from his prior rotations concluded that he was not qualified to conduct research in their programs. Notably, Plaintiff does not allege that Harancher was unqualified to continue in his lab but was nonetheless allowed to continue. He also fails to allege any other facts to show that Harancher was similarly situated to Plaintiff other than being a fellow

student in the same program. Moreover, Plaintiff's bald conclusory statements that other students were similarly situated and treated more favorably are wholly unsupported by any factual allegations.

Therefore, the motion to dismiss with respect to the equal protection claim in Count XXXII should be granted.

### 3. Conspiracy Claims

Plaintiff alleges conspiracy claims under 42 U.S.C. §§ 1983 (Count XXXI), 1985(2) (Count XIX) and 1985(3) (Count XVIII) and a related claim under § 1986 (Count XX), as well as a claim of civil conspiracy under Pennsylvania law (Count XXI). Defendants contend that all of these claims should be dismissed.

"To state a section 1983 conspiracy claim, a plaintiff must allege: (1) the existence of a conspiracy involving state action; and (2) a deprivation of civil rights in furtherance of the conspiracy by a party to the conspiracy." *Marchese v. Umstead*, 110 F. Supp. 2d 361, 371 (E.D. Pa. 2000) (citations omitted). "A plaintiff must make 'specific factual allegations of combination, agreement, or understanding among all or between any of the defendants to plot, plan, or conspire to carry out the alleged chain of events.' [O]nly allegations of conspiracy which are particularized, such as those addressing the period of the conspiracy, the object of the conspiracy, and certain other action of the alleged conspirators taken to achieve that purpose will be deemed sufficient....'" *Panayotides v. Rabenold*, 35 F. Supp. 2d 411, 419 (E.D. Pa. 1999) (quoting *Hammond v. Creative Fin. Plan. Org., Inc.*, 800 F. Supp. 1244, 1249 (E.D. Pa. 1992); *Dutton v. Buckingham Twp.*, 1997 WL 732856, at *2 (E.D. Pa. Nov. 13, 1997)), *aff'd mem.*, 210 F.3d 358 (3d Cir. 2000).

Plaintiff has failed to make any specific or plausible factual allegations of an understanding among the Defendants to plan or carry out a conspiracy or any particularized allegations as to the

existence of a conspiracy. Simply claiming that a conspiracy existed is insufficient. Therefore, this claim fails to state a claim upon which relief may be granted and should be dismissed.

Likewise, Plaintiff's Section 1985(2) should be dismissed. Section 1985(2) relates to conspiracies to obstruct justice, intimidate parties, witnesses or jurors. It has no relevance to the facts of this case. *See Rode v. Dellarciprete,* 845 F.2d 1195, 1207 (3d Cir. 1988); *Rudolph v. Clifton Heights Police Dep't*, 2008 WL 2669290, at *9 (E.D. Pa. July 7, 2008).

A Section 1985(3) claim relates to conspiracies to deny individuals the equal protection of the laws. However, it requires sufficient facts from which the court could infer an agreement or understanding to violate a plaintiff's rights. *See Sanchez v. Coleman*, 2014 WL 7392400, at *10 (W.D. Pa. Dec. 11, 2014) (prisoner's allegations of a conspiracy to deny him medical treatment and subject him to an unsafe environment were insufficient). The Second Amended Complaint fails to plead any facts to support such a conspiracy, nor has Plaintiff sufficiently alleged that he has been denied equal protection as previously discussed. Therefore, this claim is deficient and should also be dismissed.

Moreover, because Plaintiff fails to state a claim under § 1985, he cannot state a claim under § 1986. "Liability under 42 U.S.C. § 1986 is predicated on knowledge of a violation of 42 U.S.C. § 1985." *Mannery v. Miller*, 2007 WL 1395358, at *7 (W.D. Pa. May 9, 2007). *See also Rogin v. Bensalem Twp.*, 616 F.2d 680, 696 (3d Cir. 1980).

Finally, with respect to Plaintiff's state law civil conspiracy claim, the following elements are required to state a cause of action: "(1) a combination of two or more persons acting with a common purpose to do an unlawful act or to do a lawful act by unlawful means or for an unlawful purpose; (2) an overt act done in pursuance of the common purpose; and (3) actual legal damage." *Smith v. Wagner*, 588 A.2d 1308, 1311-12 (Pa. Super. 1991). As discussed above, Plaintiff has

failed to allege any facts that would support these elements. Therefore, this claim should also be dismissed.

In summary, the motion to dismiss should be granted with respect to the conspiracy claims in Counts XVIII (§ 1985(3) conspiracy), XIX (§ 1985(2) conspiracy), XX (§ 1986), XXI (civil conspiracy) and XXXI (§ 1983 conspiracy).

### 4. PHRA and PFEOA Claims

Plaintiff alleges claims under the PHRA and the PFEOA for disparate treatment (Counts VIII and XV), retaliation (Counts IX and XVI) and hostile work environment (Counts X and XVII). Defendants contend that all of these claims should be dismissed.

PHRA and PFEOA claims are treated in the same manner as Title VII claims. *See Burgh v. Borough Council of Borough of Montrose*, 251 F.3d 465, 469 (3d Cir. 2001). Therefore, his claims should be dismissed for the same reasons previously articulated.[3] In addition, he cannot raise claims for actions that occurred prior to February 13, 2021, including his dismissal from the graduate program, because they are time barred. 43 P.S. § 959(h); 24 P.S. § 5007. Plaintiff cites no adverse actions that occurred after that date. As a result, all of his PHRA and PFEOA claims should be dismissed.

Therefore, with respect to Counts VIII (PHRA disparate treatment), IX (PHRA retaliation), X (PHRA hostile work environment), XI (PHRA aiding and abetting), XV (PFEOA disparate treatment), XVI (PFEOA retaliation) and XVII (PFEOA hostile work environment), the motion to

---

[3] In addition, he has alleged a claim of aiding and abetting liability under the PHRA (Count XI). Unlike the federal statute, the PHRA has an "aiding and abetting" provision, 43 P.S. § 955(e). *See Dici*, 91 F.3d at 552. "Individual defendants cannot, however, be liable for violations of Section 955(e) if there is no primary violation of the PHRA." *Sampson v. Methacton Sch. Dist.*, 88 F. Supp. 3d 422, 446 (E.D. Pa. 2015) (citation omitted). Because Plaintiff has failed to plead a primary violation, he cannot state a claim for aiding and abetting liability either.

dismiss should be granted.

### 5.  Intentional Interference with Contractual Relationship Claim

Plaintiff alleges a claim of intentional interference with a contractual relationship in Count XXII. Defendants correctly contend that he does not identify a contractual relationship with a third party with which any of the defendants allegedly interfered, which is a requisite element of this claim. *See Sam Mannino Enterprises, LLC v. John W. Stone Oil Distrib., LLC*, 127 F. Supp. 3d 318, 333 (W.D. Pa. 2015). Therefore, with respect to Count XXII, the motion to dismiss should be granted.

### 6.  Negligence Claims

Defendants contend that Plaintiff's claims of negligence (Count XXIII), negligent hiring (Count XXIV), negligent retention (Count XXV), negligent training or supervision (Count XXVI) and negligent entrustment (Count XXVII) must be dismissed. They assert that Plaintiff has failed to allege that they owed him a duty of care, how they breached the duty or how the breach was the actual and proximate cause of the harm he suffered.

Plaintiff argues that Dr. Tsang, who is not a defendant in this case, owed him a duty to advise him regarding labs so that he could remain in the program and that Dr. Horn, Dr. Bernstein and Vice Dean Thompson had a duty "to prevent or aid in preventing the commission of those preventable wrongs with reasonable diligence as described in paragraphs of the SAC." (ECF No. 101 ¶¶ 123-26.) However, Plaintiff has not cited nor has the Court found any case law that supports the notion that a university or its officials owe students a duty of care as described under these circumstances. *See Walsh v. Univ. of Pittsburgh*, 2015 WL 128104, at *7 (W.D. Pa. Jan. 8, 2015) (describing the nature of the relationship between a student and a private school as a *contractual* one); *Kostin v. Bucks Cmty. Coll. (Nursing Dep't)*, 2022 WL 952729, at *14 (E.D. Pa. Mar. 30,

2022) (plaintiff dismissed from nursing program who alleged that that defendants owed her a duty of care merely stated legal conclusions and failed to identify *what* duty they owed her or *how* they breached it); *Manning v. Temple Univ.*, 2004 WL 3019230, at *12 (E.D. Pa. Dec. 30, 2004), *aff'd*, 157 F. App'x 509 (3d Cir. 2005) (student dismissed from medical program could not maintain a negligence claim because she "has simply not presented evidence that any of the defendants failed her with respect to any such duty recognized by law"). Therefore, Plaintiff's negligence claim should be dismissed.

"Under the other theory of liability for negligent hiring and supervision … a plaintiff can seek to impose direct liability on an employer that acted negligently in hiring, retaining, or supervising an employee who causes harm while she is acting outside the scope of her employment." *Buttermore v. Loans*, 2016 WL 308875, at *4 (W.D. Pa. Jan. 25, 2016) (citations omitted). However, Plaintiff's allegations refer to actions taken by individuals *within* the scope of their employment, particularly in determining whether he could continue in his graduate program. Thus, he cannot state claims for negligent hiring, supervision or retention.

Pennsylvania law follows the Restatement (Second) of Torts with respect to the tort of negligent entrustment. "It is negligence to permit a third person to use a thing or to engage in an activity which is under the control of the actor, if the actor knows or should know that such person intends or is likely to use the thing or to conduct himself in the activity in such a manner as to create an unreasonable risk of harm to others." Restatement (Second) of Torts § 308. *See Whetstone v. Malone Bussing Servs.*, 2019 WL 1459022, at *3 (W.D. Pa. Apr. 2, 2019) (liability of defendants for injuries caused by driver of bus depended upon whether driver was acting within the scope of his employment). The facts as pleaded by Plaintiff do not state a negligent entrustment cause of action.

In summary, with respect to Counts XXIII (negligence), XXIV (negligent hiring), XXV (negligent retention), XXVI (negligent training or supervision) and XXVII (negligent entrustment), the motion to dismiss should be granted.

> 7. <u>Defamation Claim</u>

Defendants contend that Plaintiff's defamation claim (Count XXVIII) should also be dismissed.

"In order to succeed on a defamation claim, a plaintiff must show: (1) the defamatory character of the communication; (2) its publication by the defendant; (3) its application to the plaintiff; (4) the understanding by the recipient of its defamatory meaning; (5) the understanding by the recipient of it as intended to be applied to the plaintiff; (6) special harm resulting to the plaintiff from its publication; and (7) abuse of a conditionally privileged occasion." *Viola v. A & E Television Networks*, 433 F. Supp. 2d 613, 616 (W.D. Pa. 2006) (citing 42 Pa. C.S. § 8343(a)).

The Second Amended Complaint fails to identify the alleged defamatory statements, but rather, only alleges generally that the University, Dr. Horn and various John Does "maliciously mischaracterized and demonized Plaintiff in verbal and written publications to employees, students, and third-parties whom [sic] understood the defamatory nature and application to Plaintiff as described in preceding paragraphs." (SAC ¶¶ 245-47.) Without a specific identification of any statement that Plaintiff contends is defamatory, his claim necessarily fails.

In addition, while the SAC specifically refers to two letters that Plaintiff received, one from the Vice Dean (the cease and desist letter) and the other from Dr. Horn (the termination letter), he fails to plead publication of either letter to a third parties or the contents of either letter. Thus, Plaintiff has failed to allege facts that would state a plausible claim for defamation, requiring its dismissal.

8.   <u>Intentional and Negligent Infliction of Emotional Distress Claims</u>

Plaintiff also brings claims of intentional infliction of emotional distress (Count XXIX) and negligent infliction of emotional distress (Count XXX). Both causes of action fail to state a claim upon which relief may be granted.

a.   <u>Intentional Infliction of Emotional Distress</u>

"One who by extreme and outrageous conduct intentionally or recklessly causes severe emotional distress to another is subject to liability for such emotional distress, and if bodily harm to the other results from it, for such bodily harm." Restatement (Second) of Torts § 46(1) (1965). Although the Pennsylvania Supreme Court has never expressly adopted this section of the Restatement, it has pointed to the Restatement's definition to describe the level of behavior necessary to maintain such a claim. *See Hoy v. Angelone*, 720 A.2d 745, 753 (Pa. 1998). The court observed that "courts have been chary to allow recovery for a claim of intentional infliction of emotional distress. Only if conduct which is extreme or clearly outrageous is established will a claim be proven." *Id.* at 753-54.

Only a few case have recognized the level of "outrageous" behavior necessary to state a claim for this tort. *See Papieves v. Lawrence*, 263 A.2d 118 (Pa. 1970) (defendant stuck and killed the plaintiffs' son with a car, failed to seek medical attention, and buried the body in a field); *Banyas v. Lower Bucks Hosp.*, 437 A.2d 1236 (Pa. Super. 1981) (plaintiff was involved in a fight which resulted in the other participant receiving a broken jaw that required surgery, but the person died during surgery due to hospital negligence; the hospital falsified the records and the plaintiff was charged with murder); *Chuy v. Philadelphia Eagles Football Club*, 595 F.2d 1265 (3d Cir. 1979) (team physician falsely reported to the media that football player had a fatal disease).

Plaintiff alleges that he was treated unfairly and dismissed from a graduate program. Even

22

if this conduct is actionable, it is neither extreme nor clearly outrageous. Thus, Plaintiff has failed to state a claim on which relief may be granted.

            b.   Negligent Infliction of Emotional Distress

As the Pennsylvania Superior Court has explained, a cause of action for negligent infliction of emotional distress is limited to four scenarios:

> (1) situations where the defendant had a contractual or fiduciary duty toward the plaintiff; (2) the plaintiff was subjected to a physical impact; (3) the plaintiff was in a zone of danger, thereby reasonably experiencing a fear of impending physical injury; or (4) the plaintiff observed a tortious injury to a close relative.

*Toney v. Chester County Hosp.*, 961 A.2d 192, 197-98 (Pa. Super. 2008) (en banc) (citation omitted), *aff'd by an equally divided court*, 36 A.3d 83 (Pa. 2011). "In all cases, a Plaintiff who alleges negligent infliction of emotional distress must suffer *immediate* and *substantial* physical harm." *Doe v. Philadelphia Cmty. Health Alternatives AIDS Task Force*, 745 A.2d 25, 28 (Pa. Super. 2000), *aff'd mem.*, 767 A.2d 548 (Pa. 2001).

None of these scenarios apply here. As District Judge Horan recently summarized: "other courts, who have considered contract or fiduciary relationships to support NIED claims, have not extended the findings from *Toney* to recognize any NIED cause of action for relationships between a college/university and a student and/or between an employer and employee." *Kling v. Univ. of Pittsburgh Med. Ctr.*, 2020 WL 4218004, at *2 (W.D. Pa. July 23, 2020) (citations omitted). *See also Walsh v. Univ. of Pittsburgh*, 2015 WL 128104, at *15 (W.D. Pa. Jan. 8, 2015) (no special relationship between student and University of Pittsburgh to support this claim). In addition, Plaintiff has failed to allege the existence of any immediate and substantial physical harm. As such, he fails to state a claim for negligent infliction of emotional distress, requiring its dismissal.

Therefore, Counts XXIX (intentional infliction of emotional distress) and XXX (negligent infliction of emotional distress) should be dismissed.

9.  <u>Supplemental Jurisdiction</u>

Even if it could be argued that any of Plaintiff's state court claims are adequately pleaded, his action nonetheless should be dismissed. As all of Plaintiff's federal claims are fatally deficient, there is no basis for continuing to exercise supplemental jurisdiction over the state law claims under these circumstances. 28 U.S.C. § 1367(c)(3). *See Hedges v. Musco*, 204 F.3d 109, 123 (3d Cir. 2000) ("where the claim over which the district court has original jurisdiction is dismissed before trial, the district court must decline to decide the pendent state claims unless considerations of judicial economy, convenience, and fairness to the parties provide an affirmative justification for doing so.")[4]

## III.    Conclusion

For these reasons, it is respectfully recommended that Defendants' Motion to Dismiss (ECF No. 98) should be granted. Because Plaintiff has already amended his Complaint twice but still fails to allege sufficient facts to support any claim upon which relief could be granted, dismissal of his claims should be with prejudice. *See Foman*, 371 U.S. at 182 (amendment may be denied based on a plaintiff's "repeated failure to cure deficiencies by amendments previously allowed").

Pursuant to the Magistrate Judges Act, 28 U.S.C. § 636(b)(1)(B) and (C), and Rule 72.D.2 of the Local Civil Rules, litigants who seek to challenge this Report and Recommendation must seek review by the district judge by filing objections within fourteen (14) days of the date of its issuance. Any party opposing the objections shall respond within fourteen (14) days thereafter. Failure to file timely objections will waive the right of appeal. *Brightwell v. Lehman,* 637 F.3d

---

[4] Notably, Plaintiff's action against the University of Pittsburgh in the Court of Common Pleas of Allegheny County, in which he makes some similar allegations as to those pleaded in the SAC, appears to remain pending as of the date of this Report and Recommendation.

187, 193 n.7 (3d Cir. 2011).


Dated: August 18, 2022                          s/ Patricia L. Dodge
                                                PATRICIA L. DODGE
                                                UNITED STATES MAGISTRATE JUDGE